[No. 48714–6.   En Banc.   March 3, 1983.]

*In the Matter of* ARMED ROBBERY.

*Matthew W. Peach* and *William Johnston,* for appellant.

*David S. McEachran, Prosecuting Attorney,* for respondent.

*Jim Lobsenz* on behalf of the American Civil Liberties

Union, amicus curiae for appellant.

PEARSON, J.—Appellant Mr. T appeals an order of the Superior Court directing him to appear in a physical lineup. The only issue before us is whether the order was valid. We hold that the order violated the federal and state constitutions because it constituted a seizure of Mr. T on less than probable cause.

On April 21, 1982, the prosecuting attorney for Whatcom County sought a court order requiring Mr. T to show cause why he should not be ordered to appear in a physical lineup. The prosecutor supported his motion with an affidavit, the contents of which may be summarized as follows.

Shortly before 11 p.m. on August 31, 1981, Albertson's grocery store in Bellingham, Washington, was robbed by a gunman. The manager of the store, a Mr. Blair Wilson, gave police officers a description of the gunman. This description corresponded to the description given by another employee of a man seen in the store shortly before the robbery. The investigating officer, Detective McNeill, determined (by means not disclosed in the affidavit) that Mr. T resembled the man described by the two store employees. Detective McNeill prepared a photographic lineup of six individuals, including Mr. T. When shown these photographs, Mr. Wilson, the grocery store manager, indicated that the photograph of Mr. T bore "a striking resemblance [to] the person, but due to the quality of the photograph and the seriousness of the crime, he would like to see an in–person lineup with this individual included."

The Superior Court issued an order requiring Mr. T to show cause why he should not appear on April 29, 1982, at a physical lineup conducted by the Bellingham Police Department. Mr. T apparently did not appear, and a second show cause order was entered on April 29 requiring him to appear on May 6. On May 6, Mr. T's counsel moved to dismiss the show cause proceeding. The court continued the matter for a week to allow the prosecutor to review authorities. In ordering this continuance, the judge said, "I

would view the affidavit submitting the order to show cause as being one that would support probable cause for a charge."

At the hearing on May 13, 1982, the prosecutor urged the court to follow *Wise v. Murphy,* 275 A.2d 205 (D.C. 1971), which authorized a lineup order on less than probable cause. The court accepted this authority, reasoning that "a lineup is a reasonable intrusion in a case involving robbery," and that the court had inherent power to order participation in a lineup. There was, however, a "duty to enquire into the circumstances in which a lineup is reasonably necessary." The court apparently found that the circumstances revealed in the prosecutor's affidavit established such reasonable necessity; it placed considerable emphasis on the fact that the affidavit referred to Mr. T's "striking resemblance" to the alleged robber. The court ordered that preparations be made for a lineup and directed counsel to suggest conditions to be imposed to protect Mr. T.

On June 3, after hearing counsel's suggested conditions, the court entered an order directing Mr. T to appear in a physical lineup on June 22.

Mr. T appealed immediately to this court, and on June 6 the commissioner granted accelerated review and stayed the trial court's order requiring Mr. T to appear in the line-up.

█ We hold that the trial court's order cannot stand because it violates the privacy interests guaranteed by the fourth amendment to the United States Constitution and article 1, section 7 of this state's constitution. The Fourth Amendment protects individual citizens against unreasonable seizures. The state constitution protects individual citizens against being disturbed in their private affairs without authority of law. We have construed Const. art. 1, § 7 as being at least as protective of individual privacy as the Fourth Amendment and in some instances more expansively. *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982).

Compelling a person to appear in a physical lineup con-

stitutes a "seizure" regulated by the Fourth Amendment. "'[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.'" *State v. White,* 97 Wn.2d at 105 (quoting *Terry v. Ohio,* 392 U.S. 1, 16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). A person required to attend a lineup would certainly have his "freedom to walk away" restricted, at least for the duration of the lineup. The procedure contemplated in the present case constitutes a substantial intrusion on the individual's freedom. Mr. T would be required to present himself at the police station and line up with five other individuals in a small room, to be observed by the witness through a one–way mirror. He would be required to speak four phrases allegedly uttered by the perpetrator of the robbery. The procedure would be recorded on audio-tape, and possibly videotape, and still photographs would be taken. Clearly, such a procedure constitutes a seizure of Mr. T's person.

Seizures regulated by the federal and state constitutions must, subject to a handful of exceptions, be based on probable cause. "Those cases authorizing 'seizures' of persons on lesser cause are narrowly drawn and carefully circumscribed." *State v. White,* 97 Wn.2d at 97.

The probable cause requirement will apply to seizures for the purpose of physical lineup unless such seizures fall within one of the narrowly drawn exceptions. The only case cited by the State which has upheld an order on less than probable cause to compel a suspect to appear in a lineup is *Wise v. Murphy, supra.* The court in that case conceded that detention for the purpose of a lineup constituted a "seizure" under the Fourth Amendment (275 A.2d at 212) and conceded that the elements of "probable" identification sufficient for a formal arrest were lacking. 275 A.2d at 211. Nevertheless, the court applied a balancing test of the type used in *Camara v. Municipal Court,* 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967) to determine the "reasonableness" of the intrusion on the suspect's liberty. *Wise v. Murphy,* 275 A.2d at 213. The court compared the intru-

sion to that authorized in *Terry v. Ohio,* which held that a "stop and frisk" on less than probable cause did not violate the Fourth Amendment.

> On balance, and realistically viewing the impact of a court–ordered lineup of the kind here contemplated on liberty, we conclude, under the test expressed in Camara v. Municipal Court, . . . that the public interest can validly require this intrusion.

(Footnote omitted.) *Wise v. Murphy,* 275 A.2d at 215–16. The *Wise v. Murphy* decision represents a significant expansion of the limited "stop and frisk" exception to probable cause recognized in *Terry v. Ohio.* The Supreme Court has recently reaffirmed its intention that the *Terry* exception be narrowly applied. In *Dunaway v. New York,* 442 U.S. 200, 210, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979), the Court said of *Terry:*

> First, it defined a special category of Fourth Amendment "seizures" so substantially less intrusive than arrests that the general rule requiring probable cause to make Fourth Amendment "seizures" reasonable could be replaced by a balancing test. Second, the application of this balancing test led the Court to approve this narrowly defined less intrusive seizure on grounds less rigorous than probable cause, but only for the purpose of a pat–down for weapons.
>
> Because *Terry* involved an exception to the general rule requiring probable cause, this Court has been careful to maintain its narrow scope. *Terry* itself involved a limited, on–the–street frisk for weapons.

This language does not permit the expansive analysis of *Terry* adopted in *Wise v. Murphy,* and we therefore find that analysis unpersuasive.

The court in *Wise v. Murphy* also referred to dicta from *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969), which suggested that in limited circumstances some loosening of the probable cause requirement for certain "investigatory detentions" for obtaining fingerprints might be constitutionally permissible:

> It is arguable . . . that, because of the unique nature of the fingerprinting process, such detentions might, under

narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense.

*Davis v. Mississippi,* 394 U.S. at 727. The court in *Wise* remarked that *Davis* "tends to support our conclusion that court–ordered identification procedure for unarrestable suspects can be constitutional". *Wise v. Murphy,* 275 A.2d at 216. The dicta in *Davis v. Mississippi* have been applied to authorize detention for fingerprinting of suspects on less than probable cause in at least one case. *In re Fingerprinting of M.B.,* 125 N.J. Super. 115, 309 A.2d 3 (1973). *Davis* has not, however, been cited by any case other than *Wise v. Murphy* as supporting court ordered lineup on less than probable cause. In fact, *Davis* itself specifically distinguishes lineups from fingerprinting:

> [F]ingerprinting is an inherently more reliable and effective crime–solving tool than eyewitness identifications or confessions and is not subject to such abuses as the improper line–up and the "third degree."

*Davis v. Mississippi,* 394 U.S. at 727. We find no support in *Davis* for loosening the probable cause requirements for seizures for lineups.

■ Some jurisdictions have adopted rules which authorize the seizure of an individual (on less than probable cause) to obtain physical evidence, such as an eyewitness identification. Ariz. Rev. Stat. Ann. § 13–3905 (1978); Colo. Rev. Stat. Ann., Rules of Crim. Proc., Rule 41.1(c) (1973); N.C. Gen. Stat. § 15A–271 (1978); 4 Idaho Code § 19–625 (Supp. 1974); Utah Code Ann. § 77–8–1 (Supp. 1981). State courts which have considered the constitutionality of these rules have generally approved them as being within the scope of an exception to the probable cause requirement similar to that recognized in *Terry v. Ohio. See, e.g., State v. Grijalva,* 111 Ariz. 476, 533 P.2d 533 (1975); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). We find these cases unpersuasive for two reasons. First, no such rules have been adopted in this jurisdiction. Second, we share the view of the New York Court of Appeals that "it is hard to

regard such holdings as constitutionally firm." *In re Abe A.,* 56 N.Y.2d 288, 295, 437 N.E.2d 265, 452 N.Y.S.2d 6, 10 (1982).

We conclude, therefore, that an individual may not be ordered to participate in a lineup where no probable cause exists to believe that the individual has committed the offense under investigation.

If, on the other hand, there is probable cause to believe that an individual has committed the offense under investigation, then that individual may be arrested by the police. Subject to the limitation recognized in *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), an arrest is valid without a warrant, so long as the arresting officer has probable cause to make the arrest. *Beck v. Ohio,* 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1965).

> A police officer is privileged to arrest without a warrant for offenses committed outside his presence if he has reasonable grounds to believe (1) that the offense committed is a felony, and (2) that the person apprehended committed the felony.

*Kellogg v. State,* 94 Wn.2d 851, 854, 621 P.2d 133 (1980).

If probable cause is sufficient to justify the extensive intrusion of a full arrest, a fortiori it is sufficient to justify the lesser intrusion of detention for the purpose of a physical lineup. If police officers have probable cause to arrest a suspect they are therefore entitled to require the suspect to appear in a lineup. No warrant is necessary for an arrest; therefore none is necessary for detention for participation in a lineup. If probable cause to arrest exists, it is therefore not necessary to obtain a court order directing the suspect to appear in a lineup.[1]

In the present case, the record is insufficient to establish that there was probable cause to arrest Mr. T. The only

---

[1]There appears to be no reason the police may not obtain a judicial determination of probable cause prior to exercising their privilege to seize the suspect for a lineup. *See In re Abe A.,* at 296–97. CrR 2.2(a), which limits the issuance of arrest warrants to cases where an indictment is found or an information is filed, does not preclude the court's making a determination of probable cause.

information in the record is the prosecutor's affidavit. The only information in this affidavit which tends to identify Mr. T as the perpetrator of the robbery is the tentative, equivocal identification by the grocery store manager. The affidavit does not even provide a firsthand report of the identification. It constitutes hearsay upon hearsay: the witness' comments were made to an investigating officer who relayed them to the affiant. Moreover, the affidavit is silent as to when the photographic lineup was presented to the witness; it may have been as long as 7 months after the robbery.

Apparently, neither the police nor the trial court was persuaded that the affidavit established probable cause to believe Mr. T had committed the robbery. Instead of arresting Mr. T, the police took the highly unusual step of applying for an order directing him to appear in a lineup. The trial court, although it intimated orally that it considered probable cause had been established, entered no finding to this effect. Indeed, by basing its decision on *Wise v. Murphy,* 275 A.2d 205 (D.C. 1971), the trial court implicitly acknowledged that the record before it did not establish probable cause.

The order directing Mr. T to appear in a lineup therefore violated the federal and state constitutions and is invalid.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DORE, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DOLLIVER, J., concurs in the result.